Good morning, and may it please the Court. My name is Andrew Koenig, and I'm the attorney for plaintiff-appellant Aaron Kamiyama. I think the main thing that needs to be pointed out in this case, in just a general legal concept, is I think it's important for reviewing courts to send messages to administrative lodges that they need to be precise and make adequate factual findings to support their ultimate legal conclusions. And there, obviously, is case law supporting that concept. And here, the reviewing court, the district court, myself, in evaluating this case for appeal, we're really stuck with speculation, a lot of supposition, a lot of assumptions because of the lack of precise findings. Let's be specific. What about the hypo presented to the vocational expert? Wasn't that reasonably specific? Was there any fundamental error in the hypo? Well, and I respectfully disagree, Your Honor. Disagree with what? With the fact that it's specific enough. Because I have, the first thing I do when I review a case is look at the residual functional capacity finding and compare it to the hypothetical question, see if it corresponds. There was four different hypothetical questions here, none of which corresponded directly to the RFC. The only one I could tell he did not rely on was number three because the vocational expert found in step five there was no past relevant work and no other work at step five. The other three, there's no correlation. The RFC finding had lifting restrictions. The hypothetical questions did not. The manipulative restrictions, there was general terminology in the RFC finding, but he used totally different adjectives, descriptive words for manipulation in the hypothetical questions posed to the vocational expert. The RFC talked in terms of forceful and frequent restrictions with tasks such as power gripping, no repetitive fine manipulations, especially with the right hand. The hypothetical questions talk in terms of moderate decrease in fine manipulation, right hand especially, fine grasping or gripping. We're left with trying to figure out if the RFC findings are a direct vocational correlation to what was posed. I think that's speculation. I don't know if forceful frequent equates to moderate. That's something we needed to ask the vocational expert. All he had to use was the same terminology as in the RFC finding, and we'd have clear vocational expert testimony. Mr. Koenig, I should know the answer to this, but I don't. Is the vocational expert typically permitted to sit in the hearing room to listen to the claimant's testimony? Yes, but it is restricted. They cannot make independent analysis of evidence. It's basically whatever's posed in the hypothetical, they are stuck with responding to that. It's a bad analogy, but it's garbage in, garbage out. Unless an accurate question is posed, we're not going to get accurate testimony in return. The question was posed with some limits, was it not? Some limits, but they don't correlate with the RFC finding. That's the point that I'm trying to establish here, is we need to make sure if the ALJ is going to establish an RFC finding, those RFC restrictions need to be posed to the vocational expert in terms that equate, at least correspond generally. I think there's a lot of... If you wouldn't mind, be a little more specific on your point. Why don't they correlate from your point of view? Okay. Well, as I told you, RFC has occasional lifting restrictions of 20 pounds with both hands, and occasional 10 pounds with the right hand only. Nothing was posed in the hypothetical whatsoever with lifting restrictions. And there's more, but go ahead. Is that a real problem? So long as it is within the restrictions that have been identified in the record, aren't we all right? Well, again, the vocational expert does not make an analysis of what's in the record. The vocational expert only responds to the questions and restrictions posed by a hypothetical. They can never go beyond the restrictions posed to the hypothetical in responding to a question. So they can't make independent analysis of, yes, this usher job would require less than 10 pounds restrictions that is supported by Dr. X's findings. It is only whatever is posed. And there was no lifting posed, there was no pain restrictions posed in relevant vocational terms in any of the hypotheticals that resulted in finding a Step 5 job. Pain, I think... That's what occurs to me. Yeah. Suppose that this Kamiyama, is that the way it's called? That's right. Suppose that he's credible after all. Now, if he's credible, he's testified to an extent of pain, which I think the vocational expert said a person with that kind of pain would be disabled. Is that correct? Well, and that's the third hypothetical. The only one that resulted in no Step 5 work was the one that included a vocationally relevant pain restriction. And that's the only one I could tell that the judge didn't rely on. You know a lot more about this than I do. Okay. But if we're trying to determine whether this fellow presented enough evidence to get a finding of disability, if he's believed, then you'd say, well, the ALJ said, well, with that kind of pain, he is restricted, he's disabled, and he's unable to work. Right. Now, if that's the case, if that's what the vocational expert said, wasn't it? Based on a severe pain that would have a marked impact on work pace and concentration. That's why the judge actually related a pain to a vocational restriction. Yes. Then would we care much about the other testimony by the vocational expert if he testified that the pain was sufficient to create the disability and this fellow was disabled? Then in that third hypothetical, there would be enough for you to prevail and you don't have to argue much about the other hypotheticals that you say also were bad. Is that correct? If this panel finds there's sufficient evidence to support that hypothetical scenario, yes, that is correct. That's hitting a home run from my perspective. I'm trying to see if there's, you know, if the panel does not find sufficient evidence to show severe pain, that even there's grounds for at least a remand to further establish the proper level of pain and relating to vocational terms. The panel needs to understand this man has had two right wrist surgeries and four right elbow surgeries in a matter of four years. I think that was very, very much overlooked as far as the ALJ's decision. He seems to say, well, after every surgery, he was fine, and then he had more pain later. It was a continuum. He's had six surgeries, to be accurate, seven now. He's had a left one in 06 after the record was. So it's a continuum of pain. He's taken Vicodin up to two pills a day for four years. I think that's all indicative of a severe level of pain. Now, even if it's moderate level of pain, not severe but moderate, the only hypothetical that was posed with moderate was immediately undermined by the following statement that although he had moderate pain, it was well controlled by medication without any side effects to where there was absolutely then no vocationally relevant restrictions. There's not enough evidence to support that. And I think if you look at the overall decision based on the evidence, it's very imprecise at best. I would, for lack of a better term, call it a very sloppy decision. There needs to be precision to support their findings, and he glossed over a lot, the ALJ glossed over a lot of these types of issues. Six surgeries, Vicodin, he testified that after activity of about five minutes to an hour, he has to take a break depending on the strenuous activity. He says it takes about a half hour to 45 minutes for the Vicodin to kick in. Until then, he can't do things. All of those types of things needed to be presented to a vocational expert to get accurate vocational expert testimony back. But when the vocational expert says he can do light work, doesn't that bring with it some assumptions as to limitations? Well, the hypotheticals posed to the vocational expert that rendered that conclusion only had manipulative restrictions of moderate decrease. It had no other restrictions. Of course, if you tell a vocational expert this is all he had, fine and gross manipulation restrictions on a moderate degree, nothing else, he could have said he can do medium or heavy work. There's no other vocationally relevant limitations. The crux of my argument is the hypothetical, there was a lot of other significant evidence that should have been posed in a proper and full hypothetical question so we can rely on that evidence at step five. It is the commissioner's burden at step five to establish work. Thank you, counsel. Thank you. Your time has expired. We'll hear from the commissioner. My name is Jean M. Turk. I'm the Assistant Regional Counsel for the Commissioner, Social Security. Your Honors, if a claimant cannot perform other work, he's not disabled. And that is what the ALJ's decision shows. A claimant would have you ‑‑ a claimant would have suggested there are a number of material procedural errors that affect the ALJ's decision. But the bottom line is an individual who is between 47 and 51 years old, with modest limitations due to pain in his right arm, could perform the jobs identified by the vocational expert. The ALJ's credibility finding was adequate to show that the ALJ did not arbitrarily dismiss plaintiff's subjective complaints. He stated clear and convincing reasons for that. The reasons are clear because they're based on evidence from the record, and they're convincing because they offer a rational interpretation of the evidence. Even if there's more than one rational interpretation, the ALJ's decision must be upheld. I'm sorry, Your Honor? Why did he believe it? Why did he find it incredible? Why did the ALJ find Kamiyama incredible? The ALJ looked at a number of valid factors. The ALJ looked at the claimant's daily activities, which were consistent with claimant's RFC. They showed that a claimant could perform, at least perform, some light work based on these routine activities. The ALJ looked at claimant's use of Vicodin. It was reasonable for the ALJ to determine that if an individual had such disabling pain, and I believe the record refers to a low threshold, that the pain medication would cease to work over time, or that some other mode to alleviate the pain might be recommended. And there was a conflict with the treating physicians, was there not? I'm sorry, Your Honor. I'm not quite following. Isn't there evidence from the treating physicians that was contrary to the applicant's testimony, which went to credibility? The treating physicians basically said after all of the surgeries that the surgeries were successful. Several recommended vocational rehab. That was certainly inconsistent with claims of disability. The ALJ looked to the fact that claimant had applied for a job. It's reasonable that if someone applies for a job. The job application was with the Postal Service. Yes, Your Honor. And that was when, in 2001? I believe it was around 2000, and he claimed disability due to pain in his arm and elbow in January of 2001. But, Your Honors, if you're going to apply, I'm sorry. And the hearing was in what, 2004? I'm not quite sure. Yes, yes. But, Your Honor, if you're going to apply for a job, you're going to apply for a job that you think you can do. Yes. And the types of impairments that claimant has are not acute. Post, he could do it in 2001, but he couldn't do it in 2004. Well, then he wouldn't, then when they called him up to apply for the job, he wouldn't be able to take it. And he was never called for the job, was he? I do not know that, Your Honor. I believe he said his outpatient was outstanding. That testimony about he applied for a job was three years before the time when they had to determine whether he was disabled or not. That was my point. Well, Your Honor, these are chronic impairments, and I think the inference is if this is an impairment that's developing over time, and in 2000 he's applying for a job application, and in January 2001 he's claiming he's disabled, it's a little disingenuous to say that I'm holding myself out, that I can do this job, but on the other hand I'm disabled. I see. Maybe what you're saying is he was testifying that he was disabled in 2001, and yet he had applied for the job then. Yes. So that was an inconsistency that the ALJ thought was an inconsistency. Yes, Your Honor. That testimony. And, again, talking about the reasonableness, it was reasonable for the ALJ also to look at the other, to mention that the Plaintiff's Counsel did not produce records of this subsequent surgery. I know that's a bit troublesome, but it's unreasonable to think that an attorney would withhold evidence that might be helpful to their clients. So on the one hand, the ALJ's factors were reasonable, but when you look at the claimant's suggestion that he is totally disabled, it becomes unreasonable, that he should take a limited amount of pain medication, that he should apply for a job that he cannot do. These are factors that the ALJ looked at. But, you know, even if one reason doesn't seem reasonable to you, that's still not enough to reject the ALJ's determination that plaintiff just wasn't credible. Let me ask you this. Yes. If the determination is probably a finding of incredibility, if that stands, if that holds up, is that the end of the case, or do we still have to look at the sufficiency of the hypothetical questions? Yes. And I want to say that this was a... Have you answered that question? I'm sorry. Yes, we need to look at that, and that's second on my list. I do want to say, though, that the ALJ did find the claimant somewhat credible because of the significant limitations that were imposed on this rather young individual. The vocational expert, the questions asked to the vocational expert were reasonably complete and adequate to convey the limitations of this claimant. We have a lot of discussion about the pain. He has pain in his elbow, pain in his wrists, some of the exact. He would have a decrease in fine manipulation and fine grasping. He has pain in his elbows, pain in both hands. The ALJ conveyed this pain limitation. The VE goes on to say that the claimant could not do his past relevant work due to the frequent use of the upper extremities. The ALJ's RFC, what that really boiled down to was that this claimant had moderate limitations in performing manipulative tasks with his arm and wrist. And that is what's conveyed. Yes, Your Honor. I understand that he had a limitation of being able to lift. These are the lifting restrictions. He could lift 20 pounds occasionally with his left hand, but 10 pounds occasionally with his right. Is that, am I reading the record correctly? Yes, yes, yes, Your Honor. Now, were those restrictions taken into account in the vocational expert's conclusion? In other words, is there enough in the record to be sure that those limitations were taken into account in his final recommendation? Yes, Your Honor. I believe there is enough in the record. The specific limitations are almost a given here. The ALJ portrayed this individual as having pain in his wrists, his elbows. The VE, again, testified that because of decreased use of his upper extremities, that he could not perform his past relevant work. So I think the language in the record here conveys those kinds of lifting limitations. Well, now, what about the point which Mr. Koenig makes that when the question was asked by the ALJ of the VE, that these specific elements were not mentioned? The specific words were not used, but, again, the conversation between the vocational expert and the ALJ significantly conveyed those limitations. And, again, the ultimate job was that of an usher at a ballpark or an entertainment center, I think they say, or an accounts investigator. And the definition of any of those jobs would not reasonably require significant lifting. Again, the ALJ conveyed to the vocational expert a level of pain involved with this. The vocational expert picked up on that, knew that plaintiff could not perform his prior work due to those upper arm limitations, and then goes on to state that the jobs at most have vocational use of the hands and fingers, and that he could do this light work not so much because of the amount lifted, but because of the walking and standing. And I want to point out that although we classify jobs as sedentary and light, the major difference is that in the light work, the individual must do a great deal of standing and walking, and it does not reflect so much the weight lifted. And the same is true in sedentary. However, that individual would be restricted from standing and walking. So the weight lifted there could be very little, just as in light level, the weight lifted, and that's from our rulings 8310 and 8314. So again, in closing, Your Honor, if an individual is able to perform other work, they are not disabled. And that, I believe that the ALJ's decision sufficiently supports that. The errors were minor, not that they should be overlooked, but they do not affect the substantial evidence supporting the ALJ's decision. Thank you. Counsel, the case just argued will be submitted for decision, and we will hear argument next in Gurling Global Reinsurance v. Fremont General.
judges: Thompson, O'scannlain, Tallman